# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**IN RE: EDWARD MOSES, JR.**             **MISCELLANEOUS ACTION**

                                        **NO. 23-00084-BAJ**

## SANCTIONS ORDER

On August 4, 2023, this disciplinary action came before the Court to determine whether cause exists to sanction attorney Edward Moses, Jr. for his unrelenting pursuit of legal claims deemed "frivolous" and "wholly without merit" by the United States Court of Appeals for the Fifth Circuit. Having provided Mr. Moses notice of the possibility of sanctions, and an opportunity to respond, the Court now determines that sanctions are warranted under Federal Rule of Civil Procedure ("Rule") 11, and this Court's Local Rules, as set forth below.

### I.    BACKGROUND

Mr. Moses is a Louisiana-licensed attorney and a member of this Court's bar. Since his admission to the Middle District of Louisiana in 2006, he has appeared in both civil and criminal matters before nearly every judge in this Court's history. Previously, he even  served on this Court's Criminal Justice Act Panel, representing indigent defendants in criminal cases.

As a condition of membership to this Court's bar, Mr. Moses swore an oath to conduct himself uprightly and according the ethical standards expected of all attorneys, to conform his practice to the Federal and Local Rules, and to defend the Constitution of the United States. M.D. La. Local Civ. R. 83(b)(3)(B). For 12 years, it

appears that Mr. Moses undertook these obligations seriously—at least, there is no public record that he did not. Beginning in February 2018, however, Mr. Moses embarked on a different path, casting serious doubt on his continuing commitment to these unflinching duties.

In addition to being an attorney, Mr. Moses styles himself "Emperor" and "head of state of the Atakapa Indian Nation," a group that lacks federal or state recognition. He also sometimes calls himself "Emperor of the American Empire majestically referred to as the 'Christian Emperor d'Orleans," and "Trust Protector of the legally executed 'Tribe of מֹשֶׁה†Moses' Irrevocable Express Spendthrift Trust." In this capacity, Mr. Moses has sought to carve out a sovereign state for the Atakapa Nation, subject to his imperial rule. Since 2018, Mr. Moses's quest has included litigation in at least six federal actions—three here, and three in the U.S. District Court for the Western District of Louisiana. Mr. Moses's conduct in these cases, summarized below, is the cause for this disciplinary proceeding.[1]

## A. *Atakapa I*, No. 6:18-cv-00190-SMH-PJH (W.D. La.)

Mr. Moses's turn began on February 14, 2018, when he initiated an action styled *Atakapa Indian de Creole Nation v. Louisiana* ("*Atakapa I*") in the Western District of Louisiana.[2] Proclaiming himself "His Majesty," "God of the Realm …

---

[1] To be clear, Mr. Moses's conduct in the Middle District alone is the cause for this disciplinary action. Nonetheless, for reasons that will become abundantly obvious Mr. Moses's litigation history in the Western District is relevant to the Court's consideration of whether to impose sanctions, because it is probative of Mr. Moses's motive, intent, knowledge, absence of mistake, and lack of accident. Fed. R. Evid. 404(b)(2). And, of course, the Court may take judicial notice of the records filed in the Western District. Fed. R. Evid. 201; *see Taylor v. Charter Med. Corp.*, 162 F.3d 827, 829–30 (5th Cir. 1998).

[2] *Atakapa I*, No. 6:18-cv-00190-SMH-PJH (W.D. La.).

absolutely free of all government control," and the "trust protector of the American Indians located in Louisiana known as the Atakapa Indian de creole Nation,"[3] Mr. Moses sought to dissolve the Louisiana Purchase, displace federal and state authorities, and anoint himself supreme "potentate" over the territory of Louisiana.[4] On August 27, 2018, the Western District (Chief Judge Hicks) dismissed *Atakapa I* for lack of subject matter jurisdiction.[5] Later, on March 5, 2019, Judge Hicks fined Mr. Moses $2,500 under Rule 11 for attempting to re-open his "frivolous claims," explaining that Mr. Moses, "being trained in the law, would have realized after a reasonable inquiry that there was no legal foundation for the position taken."[6]

On December 10, 2019, the Fifth Circuit affirmed, issuing a terse opinion identifying Mr. Moses as *Atakapa I*'s "real plaintiff," and holding that his claims "are entirely frivolous." *Atakapa Indian de Creole Nation v. Louisiana*, 943 F.3d 1004, 1006 (5th Cir. 2019). The Circuit offered the following unvarnished summation:

> We will not try to decipher what any of this means. To do so might suggest that these arguments have some colorable merit. Despite all this, jurisdiction would still lie if [Mr. Moses] presented a non-frivolous federal question. We find none. … He seeks an injunction, not to stop anything defendants are doing to the Atakapa, but instead to "restrain[] the Doctrine of Discovery and the Doctrine of Conquest more commonly known as the Doctrine of White Supremacy." Many of the arguments depend, not on the alleged violation of any federal statute or rule, but instead on the assertion that "[t]he 1803 Louisiana Purchase Treaty is not 'Law of the Land.'"
>
> We could say more, but these examples are enough to show [that Mr. Moses's] claims are wholly without merit. The government should not

---

[3] *Atakapa I*, Doc. 36 at 7, 8-9.

[4] *Atakapa I*, Doc. 5 at 10-11, 135-148.

[5] *Atakapa I*, Doc. 37.

[6] *Atakapa I*, Doc. 64 at 3-4.

have been put to the trouble of responding to such spurious arguments, nor this court to the trouble of "adjudicating" this meritless appeal. The district court lacked jurisdiction because the claims asserted are so attenuated and unsubstantial as to be absolutely devoid of merit.

*Id.* at 1007 (quotation marks, alterations, and citations omitted).

Mr. Moses did not appeal *Atakapa I* to the Supreme Court.

### B. *Atakapa II*, No. 3:19-cv-00028-SDD-EWD (M.D. La.)

On January 15, 2019, four months after the Western District dismissed *Atakapa I*, Mr. Moses filed *Atakapa Indian de Creole Nation v. Trump, et al.* in this District ("*Atakapa II*"), where it was assigned to Chief Judge Dick.[7] Mr. Moses accompanied his original Verified Complaint[8] with an "Application For Emergency Temporary Restraining Order And Injunction," seeking to restrain "the United States and other defendants both known and unknown against erosion of his Majesty's right to be free from injury."[9] On March 11, 2019, *after* being fined $2,500 in the Western District, Mr. Moses sought leave to amend the *Atakapa II* complaint to pursue the same claims and allegations that were dismissed in *Atakapa I*,[10] including: (1) the "Louisiana Purchase Treaty was and is void, and was made without authority of law, and was never validated"; (2) "the right of property [remains] in the Tribe of מֹשֶׁה†Moses [E]xpress Spendthrift Trust"; (3) "[t]he Christian Emperor D'Orleans Edward Moses Jr [sic] has not given his consent to become a national under the United States Government or the State of Louisiana"; and, thus, (4) "the United

---

[7] *Atakapa II*, 3:19-cv-00028-SDD-EWD (M.D. La.).

[8] *Atakapa II*, Doc. 1-2 at 1.

[9] *Atakapa II*, Doc. 1 at 18.

[10] *Atakapa II*, Doc. 12.

States cannot impose its nationality through the sadistic Doctrine of Conquest[.]"[11]
On this basis, Mr. Moses demanded an injunction granting him "absolute right to
absolute sovereignty" over the territory of Louisiana, and "the absolute right to be
free from illegal and Sadistic [sic] Doctrine of European Conquest," (emphasis in
original).[12]

On February 14, 2020, two months after the Fifth Circuit's *Atakapa I* decision,
Magistrate Judge Wilder-Doomes issued a Report concluding that *Atakapa II* also
was "completely devoid of merit and should be dismissed."[13] Citing the Western
District's sanctions order, Judge Wilder-Doomes expressly warned Mr. Moses of the
possibility of additional sanctions in this Court if he continued to pursue his
"frivolous" claims:

> On January 29, 2019, the Western District issued a Memorandum
> Order, admonishing [Mr. Moses] for asserting the frivolous claims set
> forth in his application for a TRO, which was filed after the case was
> closed and which re-alleged many of the same claims that the Western
> District had already dismissed. After a show cause hearing, sanctions of
> $2,500 were imposed against [Mr. Moses]. This information is pertinent
> because [Mr. Moses's] Motion for Leave was filed in this Court *one week
> after the Western District imposed sanctions* yet asserts some of the same
> frivolous claims upon which those sanctions were based. [Mr. Moses] is
> aware that his claims have been determined frivolous yet he continues
> to needlessly waste judicial resources by re-urging them. As such, if [Mr.
> Moses] continues to assert frivolous claims in this Court, [he] should be
> ordered to show cause why Fed. R. Civ. P. 11 sanctions should not
> issue.[14]

On March 31, 2020, Chief Judge Dick adopted Judge Wilder-Doomes's

---

[11] *Atakapa II*, Doc. 12-2 at 38.

[12] *Atakapa II*, Doc. 12-2 at 61.

[13] *Atakapa II*, Doc. 17 at 8.

[14] *Atakapa II*, Doc. 17 at 8, 9-10.

Recommendation, dismissing *Atakapa II* as frivolous based on the Fifth Circuit's *Atakapa I* decision.[15] On March 3, 2021, the Fifth Circuit affirmed again, in an even shorter opinion, concluding: "For the reasons we explained in [*Atakapa I*], we hold that the district court properly dismissed this lawsuit for lack of jurisdiction because the claims were frivolous." *Atakapa Indian de Creole Nation v. Edwards*, 838 F. App'x 124 (5th Cir. 2021). As before, Mr. Moses did not appeal to the Supreme Court.

### C. *Atakapa III*, No. 6:21-cv-00450-RRS-CBW (W.D. La.)

On December 21, 2020—one year after the Fifth Circuit declared his claims frivolous—Mr. Moses filed a new action styled *Moses v. La. Gov. John Bel Edwards and U.S. President Donald Trump* ("*Atakapa III*") in the Sixteenth Judicial District Court for the Parish of Iberia, Louisiana ("Sixteenth JDC").[16] This time, "Emperor" Moses demanded an emergency "writ of quo warranto" "putting him back into immediate possession of Historic Louisiana immovable property," and "enjoining and prohibiting the [President and the Governor] from continuing their unauthorized, improper and prohibited usurpation of the King's position, authority, power, and property."[17]

The Sixteenth JDC ordered that the United States be served Mr. Moses's "Emergency Petition," and set a hearing "to show by what authority does the United States constitutional power [sic] extend to the historic Louisiana territory."[18] The

---

[15] *Atakapa II*, Doc. 23.

[16] *Atakapa III*, 6:21-cv-00450-RRS-CBW (W.D. La.), Doc. 1-1.

[17] *Atakapa III*, Doc. 1-1 at 2, 18.

[18] *Atakapa III*, Doc. 1-1 at 1, 4.

United States responded by removing *Atakapa III* to the Western District, on the basis that it was a "civil action against the United States." *See* 28 U.S.C. § 1442(a).[19] Mr. Moses did not challenge removal, and the result of *Atakapa III* was the same as *Atakapa I* and *II*: the Western District (Judge Summerhays) dismissed the action with prejudice "because the claims are frivolous."[20]

Mr. Moses fared even worse on appeal. On May 20, 2022, the Fifth Circuit affirmed yet again, in its shortest opinion yet. This time, however, the Circuit—on its *own* order—sanctioned Mr. Moses an additional $2,500, warning of more to follow if he did not change his course:

> In 2019, Moses was sanctioned $2500 by the Western District of Louisiana; he has since been reminded of his obligation as an attorney not to advance frivolous litigation under Federal Rule of Civil Procedure 11 and Louisiana's Rules of Professional Conduct. In light of the apparent ineffectiveness of prior sanctions and warnings, we SANCTION Moses in the amount of $2500. We again remind him of his professional obligations, and we WARN him that filing or prosecuting frivolous litigation will result in additional sanctions.

*Moses v. Edwards*, 2022 WL 1605233, *1 (5th Cir. 2022). Again, Mr. Moses did not appeal to the Supreme Court.

### D. *Atakapa* Spinoffs: *Colbert v. Paul*, No. 3:19-cv-00001-SDD-SDJ (M.D. La.) and *Warner v. Vermillion Parish*, No. 6:21-cv-02323-RRS-CBW (W.D. La.).

Remarkably, this *still* does not get us to *Atakapa IV*—the action that triggered this disciplinary proceeding. There is a twist. In the midst of *Atakapa I, II,* and *III*, Mr. Moses also co-opted his *clients'* cases to assert his *Atakapa* agenda. This

---

[19] *Atakapa III*, Doc. 1 at 1-4.

[20] *Atakapa III*, Doc. 11; *see also* Doc. 8.

happened at least twice.

The first occasion occurred in this District, in an action styled *Colbert v. Paul*, before Chief Judge Dick.[21] The *Colbert* case began on January 2, 2019, when plaintiff Michael Colbert, proceeding *pro se*, filed a complaint alleging constitutional claims of unlawful arrest and excessive force against the Chief of the Baton Rouge Police Department (BRPD) and various BRPD officers.[22] Colbert's original complaint gave no hint that he challenged the sovereignty of the United States or the State of Louisiana. Two months later, Mr. Moses enrolled as Colbert's counsel.[23] Thereafter, Mr. Moses attempted to morph Colbert's straightforward police brutality claim into the same assault on the "Louisiana Purchase Treaty" advanced in the *Atakapa* litigation, seeking leave to file a 283-page Second Amended Complaint demanding return of Louisiana "back to the Highest Supreme Chief of the Ancient Snake Band of the Atakapa Dragon Clan who identify themselves as the 'Tribe of מֹשֶׁהMoses' 'The Tribe of Isa' or 'The People' more loosely known as Louisiana Negro People of Color located in New Iberia." [24]

On July 14, 2020, Magistrate Judge Johnson flatly rejected Mr. Moses's gambit, again finding Mr. Moses's proposed new claims and allegations "wholly without merit."[25] Even then, Mr. Moses did not quit. First, he appealed Judge

---

[21] *Colbert*, 3:19-cv-00001-SDD-SDJ (M.D. La.).

[22] *Colbert*, Doc. 1.

[23] *Colbert*, Doc. 6, Doc. 8.

[24] *Colbert*, Doc. 30-2 at ¶ 1291.

[25] *Colbert*, Doc. 44 at 4-5.

Johnson's Order to Chief Judge Dick.[26] When this failed, and *after* he settled Colbert's original constitutional claims against the BRPD,[27] Mr. Moses petitioned the Fifth Circuit to reverse Judge Johnson's order. On June 2, 2021, the Circuit dismissed Mr. Moses's appeal, warning him *again* that he was engaged in sanctionable conduct:

> [A]s the magistrate judge rightly noted, Colbert's counsel attempted to assert similar claims as those raised in Colbert's proposed second amended complaint in two other cases this Court reviewed on appeal. Specifically, we held in [*Atakapa I*], that the proposed claims are "wholly without merit," such that the district court lacked jurisdiction over them. Three months ago, we again held that similar claims were frivolous. Because this is the third time counsel for Colbert has appealed claims previously determined to be frivolous by this Court, we warn counsel that if he pursues another appeal to assert these claims, he may be subject to sanctions.

*Colbert*, 858 F. App'x 702, 704 (5th Cir. 2021) (footnotes omitted). Again, no appeal to the Supreme Court.

Incredibly, Mr. Moses repeated the same ruse in the Western District, in an action styled *Warner v. Vermillion Parish*.[28] On August 4, 2021, *pro se* plaintiff Tiffany Warner filed a complaint alleging that Vermillion Parish authorities unlawfully seized her dogs.[29] Warner's original complaint said nothing of the validity of the Louisiana Purchase. Three months later, Mr. Moses enrolled as counsel,[30] and thereafter filed an amended complaint adding the State of Louisiana as a Defendant, and vastly expanding the scope of Warner's claims, alleging for the first time: "the

---

[26] *Colbert*, Doc. 46, Doc. 47.

[27] *Colbert*, Doc. 50, Doc. 51, Doc. 54, Doc. 55.

[28] *Warner*, 6:21-cv-02323-RRS-CBW (W.D. La.).

[29] *Warner*, Doc. 1.

[30] *Warner*, Doc. 7, Doc. 9.

Louisiana Purchase treaty was not ratified"; "an unratified treaty is without force or effect"; "[b]ecause the Louisiana Purchase treaty was never ratified TIFFANY WARNER questions whether she is within the jurisdiction of the United States or is she within the jurisdiction of the sovereign Atakapa Tribal Nation"; and "Europeans (White People) who consider themselves United States citizens illegally confiscated her property under the color of law."[31]

On September 22, 2022, Magistrate Judge Whitehurst recommended that Mr. Moses's new allegations be stricken, and that Warner's claims be dismissed. As to the stricken allegations, Judge Whitehurst reiterated that Mr. Moses had already been sanctioned *twice* for advancing the same "meritless" claims:

> Both this Court and the Fifth Circuit have previously sanctioned Plaintiff's counsel for such frivolous claims. The Fifth Circuit explicitly warned him against filing further frivolous claims[.]
>
> …
>
> This Court will not waste time attempting to again address Plaintiff's allegations, seemingly of Mr. Moses' design. These claims are meritless and should be stricken from the Complaint[.][32]

On October 25, 2022, the Western District (Judge Summerhays) adopted Judge Whitehurst's Recommendation, and dismissed Warner's action with prejudice.[33]

Mr. Moses did not appeal the Western District's judgment, but he did file a Motion For New Trial, restating his position regarding "the unratified Louisiana

---

[31] *Warner*, Doc. 27 at ¶¶ 80-81, 100-101.

[32] *Warner*, Doc. 103 at 9-10.

[33] *Warner*, Doc. 109.

Purchase treaty."[34] On April 6, 2023, Judge Summerhays denied Mr. Moses's Motion, determining that there was "no basis for the relief requested."[35]

### E. *Atakapa IV*, No. 3:22-cv-00539-BAJ-RLB (M.D. La.)

Now, finally, *In Re: Atakapa Indian De Creole Nation a/k/a "Tribe Of מֹשֶׁה†Moses" Express Spendthrift Trust* ("*Atakapa IV*"), the last of the *Atakapa* cases, and the action that brings us here. On November 16, 2021, Mr. Moses initiated *Atakapa IV* in the Nineteenth Judicial District Court for the Parish of East Baton Rouge ("Nineteenth JDC"), filing an "*Ex Parte* Petition To Make Judgment Executory."[36] The Petition itself was unremarkable, and merely requested that two prior Louisiana judgments be made "executory" in the Nineteenth Judicial District.[37]

The first of these prior judgments is an innocuous consent judgment entered by the Baton Rouge City Court, endorsing a $1,500 settlement agreement negotiated by Mr. Moses in a wage-garnishment action.[38] The second of these "judgments," however, is nothing but bizarre—a December 8, 2020 "Order" from the Sixteenth JDC approving Mr. Moses's "Ex Parte Petition And Application For Trust Instruction," and, in doing so, declaring "the 'TRIBE OF מֹשֶׁה†MOSES' Express Spendthrift Trust … a foreign trust 'governed by the Law of Moses, a jurisdiction other than Louisiana," whose property is held to the exclusion of any other "State or Nation," under the

---

[34] *Warner*, Doc. 110-2 at 9-10.

[35] *Warner*, Doc. 125.

[36] *Atakapa IV*, No. 3:22-cv-00539-BAJ-RLB (M.D. La.), Doc. 1-1 at 1.

[37] *Atakapa IV*, Doc. 1-1 at 1.

[38] *Atakapa IV*, Doc. 1-1 at 3-4.

dominion of "the CHRISTIAN EMPEROR D'Orleans Edward Moses Jr."[39]
Inexplicably, on December 8, 2021, the Nineteenth JDC entered a "Final Judgment"
(the "Executory Judgment") granting Mr. Moses's Ex Parte Petition, making the
original Sixteenth JDC "Order" "executory" in the Nineteenth Judicial District.[40]

Three weeks later, on December 29, 2021, Mr. Moses returned to the
Nineteenth JDC and filed a wholly new 91-paragraph "Application For Ex Parte
Trust Instruction Emergency Temporary Restraining Order And Preliminary And
Permanent Injunction" (the "Application").[41] As in the prior *Atakapa* litigation, Mr.
Moses introduced himself as "Emperor Moses" … the head of state of the Atakapa
Indian Nation,"[42] and demanded a "permanent injunction enjoining Europeans of the
State of Louisiana … from executing and/or enforcing the laws of Louisiana or any of
these laws … within the Atakapa Nation."[43] Between his introduction and his
demand, Mr. Moses's Application was littered with amplifications of the same
allegations deemed frivolous in *Atakapa I*, including:

- "[I]n the absence of an express contract with the Louisiana Aboriginal
  Indians"—*i.e.*, a valid "1803 Louisiana Purchase Treaty"—"the State of
  Louisiana and the United States is properly chargeable with the present
  value of the property which it has received and used," or "$88.344
  quintillion dollars together with interest compounded daily."[44]

- "[A] citizen and subject of the Historic Louisiana Empire must at his/her
  birth derive protection from, and consequently owe obedience or allegiance
  to, the Emperor of the American Empire majestically referred to as the

---

[39] *Atakapa IV*, Doc. 1-1 at 10-11.

[40] *Atakapa IV*, Doc. 1-1 at 2.

[41] *Atakapa IV*, Doc. 1-1 at 15-36.

[42] *Atakapa IV*, Application (Preamble).

[43] *Atakapa IV*, Application ¶ 91 (Prayer).

[44] *Atakapa IV*, Application ¶¶ 18, 21, 22.

Christian Emperor D'Orleans Edward Moses Jr, [sic] as such, de facto."[45]

- "The Atakapa Indian Nation-State does have its own systems of law, the Law of Moses, a jurisdiction other than Louisiana as the one (1) and only Government."[46]

- "'His Majesty brought this action to enjoin the 2021 election(s) and to have declared null and void the Enabling Act of Feb. 20, 1811, c. 21, (2 St. 641), which provided for the <u>choosing of Anglo-Saxon or European or white Immigrant representatives to form a convention in Atakapa Ancestral Tribal Lands</u>," (emphasis in original).[47]

- "For the Emperor of the American Empire majestically referred to as the CHRISTIAN EMPEROR D'ORLEANS Edward Moses Jr [sic] trust protector of the Atakapa Indian "Tribe of מֹשֶׁה†Moses", the laws of an absolute monarchy are not its legislative acts—they are the will and pleasure of the monarch expressed in various ways—if expressed in any, it is a law; there is no other law making, law repealing power—call it by whatever name—a royal order-an ordinance—a cedula—decree of council—or an act of an authorized officer—if made or promulgated by the king, by his consent or authority, it becomes as to the persons or subject matter to which it relates, a law of the kingdom."[48]

- "The United States and its President illegally commandeered his majesty's position, authority, power, and property in order to repay the debt the United States had incurred during the 1776 Revolutionary War, the Anglo-Saxon and Europeans' mutiny against the British King."[49]

- "As a consequence of the unratified 1803 Louisiana Purchase treaty, Atakapas Parish, a former parish (county) in southern Louisiana … which developed as the current city of St. Martinville," is sovereign Atakapa territory under the Supreme Court's holding in *McGirt v. Oklahoma*, 140 S. Ct. 2452 (2020).[50]

Mr. Moses's December 29 Application prompted two additional developments.

First, on January 7, 2022, the Nineteenth JDC *sua sponte* vacated the Executory

---

[45] *Atakapa IV*, Application ¶ 45.

[46] *Atakapa IV*, Application ¶ 47.

[47] *Atakapa IV*, Application ¶ 54.

[48] *Atakapa IV*, Application ¶ 71.

[49] *Atakapa IV*, Application ¶ 82.

[50] *Atakapa IV*, Application ¶ 84; *see id.* at ¶¶ 83-90.

Judgment, stating that it was "without legal effect because it was erroneously signed."[51] Later, the Louisiana First Circuit Court of Appeal *reversed*—reinstating the Executory Judgment—because Louisiana law prohibits a trial court from changing a judgment simply on the basis that "it was signed in error."[52] *In re Atakapa Indian de creole Nation*, 2022-0208, 2022 WL 1599997 (La. App. 1 Cir. 5/20/22).

Second, on July 8, 2022, the United States was served with Mr. Moses's December 29 Application, *and* a Nineteenth JDC Order setting a hearing on Mr. Moses's Application, at which the United Sates was required to "show cause … why this court should not grant a permanent injunction barring the enforcement of the Louisiana [E]nabling [A]ct … and the … Louisiana Purchase Treaty within the Atakapa Nation, America."[53] Following the same playbook as *Atakapa III*, the United States removed *Atakapa IV* to this District, invoking jurisdiction under 28 U.S.C. § 1442(a).[54]

A flurry of activity followed *Atakapa VI's* removal to this District. First, on August 15, 2022, Mr. Moses filed a motion to remand, arguing principally that removal was untimely because it occurred after the Nineteenth JDC entered the Executory Judgment.[55] Mr. Moses also argued that as an "Emperor" and independent sovereign, he existed outside the Court's jurisdiction.[56] On October 19, 2022,

---

[51] *Atakapa IV*, Doc. 1-1 at 54.

[52] *Atakapa IV*, Doc. 1-1 at 82.

[53] *Atakapa IV*, Doc. 1-1 at 101, 105.

[54] *Atakapa IV*, Doc. 1 at ¶ 8.

[55] *Atakapa IV*, Doc. 3-1.

[56] *Atakapa IV*, Doc. 22 at 4.

Magistrate Judge Bourgeois issued a Report rejecting Mr. Moses's arguments, recommending that *Atakapa IV* was properly and timely removed because it is an action "against or directed to" the United States, removed within 30 days of service of the Nineteenth JDC's Show Cause Order.[57]

Additionally, Judge Bourgeois shot down Mr. Moses's claim to independent sovereignty, and warned Mr. Moses *again* to stop pursuing frivolous claims:

> Mr. Moses' assertions that he is an independent "sovereign" does not preclude the exercise of federal removal jurisdiction. To be clear, federal courts do not cede their authority to individual citizens invoking the ideology of the Sovereign Citizens Movement. Mr. Moses is not only subject to state and federal laws in general, he is also subject to the rules and regulations governing practicing attorneys. Mr. Moses is reminded, again, that he has an "obligation as an attorney not to advance frivolous litigation under Federal Rule of Civil Procedure 11 and Louisiana's Rules of Professional Conduct." *Moses v. Edwards*, No. 21-30270, 2022 WL 1605233, at *1 (5th Cir. May 20, 2022).[58]

Finally, Judge Bourgeois clarified that whatever its effect under State law, the Nineteenth JDC's Executory Judgment was *not* the basis for removal, or this Court's subject matter jurisdiction: "This action was removed based on the injunctive relief sought by Mr. Moses in his Application for Injunctive Relief, and the show cause order issued by [the Nineteenth JDC]. The action was removed prior to the issuance of a final judgment subjecting the United States to the injunctive relief sought by Mr. Moses."[59] On November 9, 2022, Judge Jackson adopted Judge Bourgeois's Report.[60]

Mr. Moses, the United States, and the State of Louisiana (having also been

---

[57] *Atakapa IV*, Doc. 34 at 9.

[58] *Atakapa IV*, Doc. 34 at 10 (footnote omitted).

[59] *Atakapa IV*, Doc. 34 at 10-11.

[60] *Atakapa IV*, Doc. 40.

joined) each filed multiple additional motions. Among these, Mr. Moses sought appointment of a special master,[61] "severance" of the Nineteenth JDC's Show Cause Order,[62] and even "summary judgment on the basis that there is no genuine dispute that the 1803 Louisiana Purchase Treaty is unratified."[63]

The United States responded with a motion to dismiss *Atakapa IV* as frivolous,[64] and then, on December 14, 2022, with a motion for sanctions under Rule 11, seeking attorneys' fees for having been required yet again to respond to the same frivolous claims.[65] Consistent with Rule 11, the United States provided Mr. Moses written notice prior to filing its Motion, reminding him that "the Fifth Circuit has determined on three separate occasions that your claims are frivolous," and that he had already been sanctioned twice "for asserting nearly identical claims to the ones in this lawsuit," and demanding that he voluntarily dismiss *Atakapa IV*.[66] Mr. Moses opposed the United States' Rule 11 Motion, insisting again "that neither the United States nor the State of Louisiana can show that the April 30, 1803 Louisiana Purchase Treaty was ratified by two-thirds of the United States Senate and formally exchanged with France within the six-month deadline."[67]

On May 11, 2022, Judge Jackson issued his *sua sponte* Order and Judgment

---

[61] *Atakapa IV*, Docs. 7, 9, 23, 28, 32, 35, 38.

[62] *Atakapa IV,* Docs. 41, 43,

[63] *Atakapa IV*, Docs. 44, 52

[64] *Atakapa IV*, Docs. 12

[65] *Atakapa IV*, Doc. 45.

[66] *Atakapa IV*, Doc. 45-2.

[67] *Atakapa IV*, Doc. 51.

dismissing *Atakapa IV* as frivolous.[68] The May 11 Dismissal Order recapped the same

litigation history set forth above, and summarized the basis for dismissal as follows.

> Taking its lead from the Fifth Circuit, the Court will not attempt to
> decipher these ramblings, because "to do so might suggest that [they]
> have some colorable merit." *Atakapa I*, 943 F.3d at 1007 (quoting *Crain
> v. Comm'r*, 737 F.2d 1417, 1417 (5th Cir. 1984)). The closest Mr. Moses
> comes to presenting "a non-frivolous federal question" is his invocation
> of *McGirt v. Oklahoma* to declare St. Martinville, Louisiana a sovereign
> Atakapa territory. (Application, ¶¶ 83-89). But even then Mr. Moses
> misfires: *McGirt* held that under *existing* treaties between the United
> States and the Creek Indians "land … promised remains an Indian
> reservation for purposes of federal criminal law." *McGirt*, 140 S. Ct. at
> 2459. Here, by contrast, Mr. Moses demands a *new* sovereignty for an
> unrecognized tribe based on a treaty that allegedly does *not* exist. The
> irony is too much. Mr. Moses's claims are again wholly without merit,
> and, as a consequence, this Court lacks jurisdiction to entertain them.
> *Atakapa I*, 943 F.3d at 1007. This action will be dismissed with
> prejudice.[69]

The May 11 Dismissal Order terminated all pending motions, including the

United States' Motion for Sanctions.[70] Additionally, on May 11, Judge Jackson issued

a Show Cause Order opening a new disciplinary action, and requiring Mr. Moses to

show cause why sanctions should not be imposed under Rule 11, the Local Civil Rules

and the Louisiana Rules of Professional Conduct, and the Court's inherent power

(discussed below).[71]

On May 25, 2023, Mr. Moses filed a Motion for New Trial in the *Atakapa IV*

docket, arguing that, under "the 'prior-exclusive-jurisdiction rule' commonly referred

to as the 'Princess Lida Doctrine,'" the Court lacked authority to enter its May 11

---

[68] *Atakapa IV*, Doc. 53, 55.

[69] *Atakapa IV*, Doc. 53 at 11.

[70] *Atakapa IV*, Doc. 53 at 13.

[71] *Atakapa IV*, Doc. 54.

Dismissal Order, Judgment, *and* Show Cause Order, because the Court's adjudication was "an act of supervision over the administration of the [Tribe of מֹשֶׁה†Moses Irrevocable Express Spendthrift Trust] estate," over which the Nineteenth JDC maintains exclusive jurisdiction.[72] On May 31, 2023, Judge Jackson summarily denied Mr. Moses's Motion, citing Mr. Moses's failure "to make any showing that would cause this Court to second guess its determination that this action is but one more installment in a series of litigation that is wholly without merit and entirely frivolous."[73] Mr. Moses did not appeal.

## II.    PROCEDURAL HISTORY

Based on the *Atakapa* litigation history set forth above, and consistent with Local Civil Rule 83(b)(12)(B), the May 11 Show Cause Order notified Mr. Moses of the possibility of sanctions, and ordered him to respond in writing within 14 days. (Doc. 1). Specifically, the Show Cause Order stated that the Court was considering sanctions pursuant to Rule 11(b)(2) for advancing claims in *Atakapa IV* that have already been determined frivolous; and Local Civil Rule 83(b)(6) and 83(b)(1), and Louisiana Professional Conduct Rules 3.1 (Meritorious Claims And Contentions) and 8.4(c) (Misconduct), for advancing claims in *Atakapa IV* that have already been determined frivolous, and thus for an improper purpose.[74] (Doc. 1 at 1-2).

---

[72] *Atakapa IV*, Doc. 57-1 at 8, 12, 16.

[73] *Atakapa IV*, Doc. 58.

[74] Additionally, the Show Cause Order notified Mr. Moses of the possibility of sanctions under Rule 11(b)(1), Louisiana Professional Conduct Rules 3.3 (Candor Toward The Tribunal) and 3.4 (Fairness To Opposing Party And Counsel), and this Court's inherent power. (Doc. 1 at 1-2). The Court ultimately does not consider these alternative bases for sanctions because, for reasons set forth herein, it finds that Mr. Moses's misconduct is sanctionable under Rule 11, this Court's Local Rules, and Louisiana Professional Conduct Rules 3.1 (Meritorious Claims

Additionally, as also required by Local Rule 83(b)(12)(B), the Show Cause Order stated the range of possible sanctions—reprimand, ethics training, professional counseling, a civil fine, suspension, and disbarment—and informed Mr. Moses of his right to counsel throughout the disciplinary proceedings. (*Id.* at 1). Thereafter, on June 13, 2023, the Court entered its Order setting Mr. Moses's Show Cause hearing for August 4, 2023, before Chief Judge Dick, Judge Jackson, and Judge deGravelles. (Doc. 4).

Mr. Moses filed four responses to the Show Cause Order. The first came on May 25, 2023, and is the *same* "Memorandum In Support Of Motion for New Trial" that Mr. Moses filed in the *Atakapa IV* docket. (Doc. 2). This filing, while timely, is not responsive to any of the proposed bases for sanctions. Instead, it argues that under the "Princess Lida Doctrine" this Court lacks jurisdiction to impose sanctions because *Atakapa IV* began as an *ex parte* proceeding for authorization to administer the "Tribe Of מֹשֶׁה†Moses" Express Spendthrift Trust. (*Id.*).

Then, on June 29, 2023 Mr. Moses filed a "Supplemental Memorandum In Opposition To The United States Motion For Sanctions." (Doc. 4). This memorandum, filed five weeks after the response deadline, asserts that Rule 11 "[s]anctions in this case is [sic] not warranted because this one claim [sic] is based on law and fact." (*Id.*

---

And Contentions) and 8.4(c) (Misconduct). *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991) ("[W]hen there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power.").

at 5). Thereafter, it descends into a morass of the same frivolous claims and arguments at issue throughout the *Atakapa* litigation. As before, Mr. Moses casts himself as "Emperor," and demands "a permanent injunction enjoining state laws from operating within the Atakapa Tribal Nation." (*Id.* at 20). Mr. Moses's "Conclusion" is as recalcitrant as ever, even seeking to "reopen" *Atakapa I* and *II*:

> The Court should find that sanctions are not warranted. "Emperor Moses" is entitled to a permanent injunction protecting the Atakapa Indian Nation's historic immunity from state and local control through the permissibility of constitutional provisions enacted to protect the Tribes' "sovereign status." This court should issue an order to the United States Secretary of Indian affairs directing her to add the Atakapa Indians as an "Indian Entity Recognized by and Eligible To Receive Services from the United States Bureau of Indian Affairs, 84 Fed. Reg. 1200 (Feb. 1, 2019)" Atakapa Indian De Creole Nation v. Louisiana, 943 F.3d 1004 (5th Cir. 2019), finally, this court should reopen "Atakapa I and II."

(*Id.* at 22).

Next, on July 24, 2023, Mr. Moses filed a "Motion To Dismiss For Failure To State An Offense." (Doc. 5). Again, this Motion does not address the proposed bases for sanctions. Rather, it argues that these disciplinary proceedings are defective "because the charging document is silent as to Emperor Moses' Indian or non-Indian status and his status as a Sovereign." (*Id.* at 1).

Finally, on July 30, 2023, Mr. Moses filed a "Statement Of Undisputed Material Facts In Support Of Motion For Summary Judgment." (Doc. 6). Again, this document is not responsive to the Show Cause Order. Nor could it be, insofar as Mr. Moses filed the *same* document in the *Atakapa VI* docket on January 8, 2023, five

months *before* the Show Cause Order issued.[75]

On August 4, 2023, Mr. Moses appeared at the Show Cause hearing, and, on his own behalf, presented argument as to why sanctions should not be imposed, essentially restating the arguments set forth in his May 25 Motion For New Trial, and his June 29 Supplemental Memorandum. (Doc. 7). Mr. Moses did not disavow the claims set forth in *Atakapa IV* or the prior *Atakapa* litigation, and expressed no remorse for having again pursued these claims in this Court. After Mr. Moses concluded his presentation, the Court took the matter under advisement and now issues this Sanctions Order.

## III.   LAW AND ANALYSIS

### A. Standard

The Fifth Circuit's rules for attorney disciplinary proceedings are well-set. The following are relevant here.

First, at a basic level, "[a]ttorneys facing discipline are entitled to fair notice of the charge and an opportunity to be heard." *In re Grodner*, 587 F. App'x 166, 168 (5th Cir. 2014) (citing authorities).

Second, "the sanctioning court [must] observe scrupulously its own rules of disciplinary procedure." *Matter of Thalheim*, 853 F.2d 383, 390 (5th Cir. 1988).

Third, the Court must strictly construe any disciplinary rules used to impose a sanction of suspension or disbarment, and must resolve any ambiguities in favor of the attorney charged. *In re Goode*, 821 F.3d 553, 558 (5th Cir. 2016).

---

[75] *See Atakapa IV*, No. 3:22-cv-00539-BAJ-RLB (M.D. La.), Doc. 52-1.

Fourth, alleged misconduct must be proved by clear and convincing evidence. *In re Grodner*, 587 F. App'x at 169-170 (citing authorities).

Fifth, a violation of this Court's Local Rules requires proof of the attorney's "[w]illful failure to comply," LR 83(b)(10), but not a showing of "bad faith." *In re Goode*, 821 F.3d at 559.

Sixth, "willfulness" is not "a prerequisite to disciplinary action" under Rule 11. Fed. R. Civ. P. 11 (Advisory Committee Notes to 1983 Amendment). Still, upon proof of a Rule 11 violation, whether the improper conduct was willful may inform the Court's determination of what sanctions are appropriate. *Id.* (Advisory Committee Notes to 1993 Amendment).

### B. Discussion

#### i.    Mr. Moses's Jurisdictional Defenses Miss The Mark

As it must, the Court begins with Mr. Moses's "jurisdictional" defenses.

First, Mr. Moses recycles his argument that, under the prior-exclusive-jurisdiction rule—or "Princess Lida Doctrine"—the Court lacks authority to proceed with this disciplinary action because "[t]his court's sanction order is an act of supervision over the administration of the trust estate over which a competent state court has assumed jurisdiction." (Doc. 2 at 8, 12). Not so.

The prior-exclusive-jurisdiction rule holds that, generally, "the exercise of jurisdiction by a state court over the administration of a trust deprives a federal court of jurisdiction of a later suit involving the same subject matter." *See Princess Lida of Thurn & Taxis v. Thompson*, 305 U.S. 456, 457 (1939). In *United States v. Sid-Mars Restaurant & Lounge*, the Fifth Circuit explained that "[t]he primary reason for this

rule is 'one of necessity to prevent unseemly conflicts between the federal and state courts and to prevent the impasse which would arise if the federal court were unable to maintain its possession and control of the property, which are indispensable to the exercise of the jurisdiction it has assumed.'" *United States v. Sid-Mars Rest. & Lounge, Inc.*, 644 F.3d 270, 275 (5th Cir. 2011) (quoting *Mandeville v. Canterbury*, 318 U.S. 47, 49 (1943)). Of course, Mr. Moses knows this, because he cites the *Sid-Mars* decision in his Show Cause response. (Doc. 2 at 18-19). Had Mr. Moses read *Sid-Mars* more thoroughly, he would also know that the prior-exclusive-jurisdiction rule has no application whatsoever here, to the underlying *Atakapa IV* litigation, or to this disciplinary proceeding.[76]

Plainly, the prior-exclusive-jurisdiction rule does not apply to the underlying *Atakapa IV* suit because that case—as it appeared in *this* Court—did *not* involve the administration of a trust, or even property under the supervision of the Nineteenth JDC. True, the Nineteenth JDC's December 8, 2021 Executory Judgment—which still stands—made the Sixteenth JDC's December 8, 2020 Order executory in the Nineteenth Judicial District.[77] True also, the Sixteenth JDC's December 8 Order granted Mr. Moses authority to administer the "Tribe of מֹשֶׁה†Moses" Express

---

[76] As indicated above, the Court has already summarily rejected Mr. Moses's prior-exclusive-jurisdiction rule argument, in its May 31, 2023 Order denying Mr. Moses's post-judgment Motion For New Trial in *Atakapa VI*. And again, Mr. Moses did not appeal this ruling. Nonetheless, the Court addresses this argument once more here, due to Mr. Moses having also filed his Memorandum supporting his Motion For New Trial as his initial Show Cause response. (*See* Doc. 2).

[77] *Atakapa IV*, Doc. 1-1 at 2.

Spendthrift Trust.[78] But whatever may be said of these prior state court proceedings, they were *not* the basis of this Court's jurisdiction in *Atakapa IV*. Rather, as explained by Judge Bourgeois in his October 19, 2022 Report, the Court's jurisdiction was based Mr. Moses's wholly different December 29, 2021 Application—which, again, sought to nullify the Louisiana Purchase Treaty and the Louisiana Enabling Act, and to permanently enjoin the "Europeans of the State of Louisiana … from executing and/or enforcing the laws of Louisiana or any of these laws … within the Atakapa Nation"[79]—and the Nineteenth JDC's Show Cause Order requiring the United States to explain why such relief should not be granted.[80] Simply put, by once more taking aim at the United States' sovereign authority over the territory of Louisiana, Mr. Moses left behind any semblance that his action sought merely to administer a trust already under the Nineteenth JDC's supervision.[81]

And, of course, if the prior-exclusive-jurisdiction rule did not bar the Court's consideration of *Atakapa IV*, it plainly does not bar this disciplinary proceeding,

---

[78] *Atakapa IV*, No. 3:22-cv-00539-BAJ-RLB (M.D. La.), Doc. 1-1 at 10-12.

[79] *Atakapa IV*, Application at ¶¶ 54, 84, 91.

[80] *Atakapa IV*, Doc. 34 at 10-11; *see* Doc. 1-1, at 101, 105.

[81] Even assuming that Mr. Moses's December 29 Application was somehow related to the Nineteenth JDC's administration of the "Tribe of מֹשֶׁה‎Moses" Express Spendthrift Trust, Mr. Moses's prior-exclusive-jurisdiction rule argument still fails. Why? Because the prior-exclusive-jurisdiction rule does *not* apply when the United States is a party to the action and holds a competing claim to the land in dispute, when the state court cannot "make a complete determination of the basic issue in the litigation"; "confusion could be caused by inconsistent judgments"; and the United States' "claim of right or interest in the property … precedes the state court litigation." *Sid-Mars Rest. & Lounge*, 644 F.3d at 275 (discussing *Leiter Mins., Inc. v. United States*, 352 U.S. 220, 226-28 (1957)). Plainly these conditions are satisfied when, as here, the object of the Mr. Moses's state court litigation is to usurp the United States' sovereign authority over the territory of Louisiana. Again, Mr. Moses should know this because it is the central holding of the *Sid-Mars* decision, cited in Mr. Moses's Show Cause response.

which stands separate and apart from the *Atakapa IV* litigation, and is an exercise of this Court's inherent authority to govern the membership of its own bar. *Flaksa v. Little River Marine Const. Co.*, 389 F.2d 885, 888 & n.10 (5th Cir. 1968) ("The inherent power of a court to manage its affairs necessarily includes the authority to impose reasonable and appropriate sanctions upon errant lawyers practicing before it.").

Next, in his Motion to Dismiss, Mr. Moses argues that this proceeding is defective "because the charging document is silent as to Emperor Moses' Indian or non-Indian status and his status as a Sovereign," which are "essential elements of the charged offenses." (Doc. 5). Again, Mr. Moses misses wildly. The only "status" this disciplinary action concerns is Mr. Moses's status as an attorney admitted to practice in this District. The "charged offenses" are clearly set forth in the May 11 Show Cause and Dismissal Orders. Unquestionably, this Court may "hold disciplinary hearings for attorneys admitted to practice before it." *In re Grodner*, 587 F. App'x at 169.[82]

In sum, Mr. Moses's "jurisdictional" defenses are just as frivolous as the litigation that brought us here. *See id.* (rejecting attorney's jurisdictional defenses to disciplinary action as "frivolous in light of well-established case law authorizing district courts to hold disciplinary hearings").

### ii.    Mr. Moses Willfully Violated Rule 11

The Show Cause Order notified Mr. Moses of the possibility of sanctions under Rule 11(b)(2) for advancing claims in *Atakapa IV* that have already been determined frivolous. (Doc. 1 at 1). Rule 11(b)(2) prohibits an attorney from filing a "pleading,

---

[82] On this basis, Mr. Moses's Motion To Dismiss (Doc. 5) will be denied.

written motion, or other paper" that is not "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or for establishing new law." In determining whether a violation has occurred, the Court applies an objective (rather than subjective) standard of reasonableness. *Whitehead v. Food Max of Mississippi, Inc.*, 332 F.3d 796, 802 (5th Cir. 2003). "Accordingly, where a reasonable amount of research would have revealed to the attorney that there was no legal foundation for the position taken, Rule 11 sanctions [may] be imposed." *Atakapa I*, 2019 WL 1050405, at *1 (W.D. La. Mar. 5, 2019) (Hicks, C.J.) (quoting *Jordaan v. Hall*, 275 F. Supp. 2d 778, 787 (N.D. Tex. 2003)).

Here, the Court easily finds that the alleged Rule 11(b)(2) violation is sustained by clear and convincing evidence. Indeed, the violation is patently obvious. On December 10, 2019, the Fifth Circuit affirmed the Western District's dismissal of *Atakapa I*, deeming Mr. Moses' claims "entirely frivolous" and "wholly without merit." *Atakapa I*, 943 F.3d at 1006-07. After *Atakapa I*'s ignoble end in the Fifth Circuit, any attorney would have known that the same "claims, defenses, and other legal contentions" presented in *Atakapa IV* were *not* "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2). Yet, the same claims underlying *Atakapa I*—that the Louisiana Purchase Treaty is not "Law of the Land," and, thus, the Atakapa Nation is entitled to a new sovereignty under Mr. Moses's exclusive imperial rule—re-surfaced in *Atakapa IV*.

Further, the Court finds that Mr. Moses's Rule 11(b)(2) violation was obviously

willful. "Willful" means "[v]oluntary and intentional." BLACK'S LAW DICTIONARY (11th ed. 2019). "Willful" also "covers behavior that is 'wanton' or 'reckless.'" *In re Grodner*, No. 14-mc-00050, 2014 WL 4365080, at *6 (M.D. La. Sept. 2, 2014) (quoting *Graper v. Mid-Continent Cas. Co.*, 756 F.3d 388, 395 (5th Cir. 2014), *aff'd,* 587 F. App'x 166 (5th Cir. 2014). Between December 10, 2019—when the Fifth Circuit dismissed *Atakapa I*—and May 11, 2023—when this Court dismissed *Atakapa IV*—not *one* day passed without Mr. Moses pursuing his *Atakapa* claims in the federal forum, whether in this District, the Western District, or the Fifth Circuit. And, at every turn, his claims met the same end: dismissed as frivolous. The warnings Mr. Moses received along the way could not have been more clear. As set forth above, and again at the Show Cause hearing, prior to this Court's dismissal of *Atakapa IV*, Mr. Moses was informed by Court order not fewer than *11 times* that his claims were "frivolous" or "wholly without merit"—four times by this Court,[83] three times by the Western District,[84] and four times by the Fifth Circuit itself.[85] He was sanctioned *twice* for pursuing the same frivolous claims,[86] yet persisted in the face of at least four *more* admonishments that he may face sanctions again if he did not stop (two by this Court,

---

[83] *Atakapa II*, 3:19-cv-00028-SDD-EWD (M.D. La., Feb. 14, 2020), Doc. 17 at 8, 9-10; *Atakapa II*, 3:19-cv-00028-SDD-EWD (M.D. La., Mar. 31, 2020), Doc. 23; *Colbert v. Paul*, 3:19-cv-00001-SDD-SDJ (M.D. La., July 14, 2020), Doc. 44 at 4-5; *Atakapa IV*, 3:22-cv-00539-BAJ-RLB (M.D. La., Oct. 19, 2022), Doc. 34 at 10.

[84] *Atakapa I*, 6:18-cv-00190-SMH-PJH (W.D. La., Mar. 5, 2019), Doc. 64 at 3-4; *Atakapa III*, 6:21-cv-00450-RRS-CBW (W.D. La., Mar. 5, 2021), Doc. 11; *see also* Doc. 8; *Warner v. Vermillion Parish*, 6:21-cv-02323-RRS-CBW (W.D. La., Sept. 22, 2022), Doc. 103 at 9-10.

[85] *Atakapa I*, 943 F.3d at 1007 (Dec. 10, 2019); *Atakapa II*, 838 F. App'x at 124 (Mar. 3, 2021); *Colbert*, 858 F. App'x at 704 (June 2, 2021); *Atakapa III*, 2022 WL 1605233 at *1 (May 5, 2022).

[86] *Atakapa I*, 6:18-cv-00190-SMH-PJH (W.D. La., Mar. 5, 2019), Doc. 64 at 3-4; *Atakapa III*, 2022 WL 1605233 at *1 (May 5, 2022).

and two by the Fifth Circuit).[87] He plowed forward even after the United States warned that it would seek Rule 11 sanctions if he did not voluntarily dismiss *Atakapa IV*.[88] Mr. Moses's response to these warnings has always been (and remains) the same: nobody "can show that the April 30, 1803 Louisiana Purchase Treaty was ratified by two-thirds of the United States Senate and exchanged with France before October 30, 1803, the six-month deadline," (Doc. 4 at 4)—*i.e.*, the *same* "Louisiana Purchase Treaty is not 'Law of the Land'" claim deemed frivolous by the Fifth Circuit in *Atakapa I*. 943 F.3d at 1007.

Mr. Moses's recalcitrance in the face of these repeated warnings, admonishments, and even *sanctions* clearly shows that he did not act by mistake; he voluntarily and intentionally persisted in his frivolous campaign. Plainly, Mr. Moses's Rule 11(b)(2) violation was willful.

### iii.  Mr. Moses Willfully Violated Louisiana Rules of Professional Conduct 3.1 and 8.4(c)

The Show Cause Order also notified Mr. Moses of the possibility of sanctions under Local Civil Rule 83(b)(1) and (b)(6),[89] and Louisiana Professional Conduct Rules 3.1 and 8.4(c), for advancing claims in *Atakapa IV* that have already been determined frivolous, and thus for an improper purpose. (Doc. 1 at 1).

Louisiana Professional Conduct Rule 3.1 is essentially the local version of Rule

---

[87] *Atakapa II*, 3:19-cv-00028-SDD-EWD (M.D. La., Feb. 14, 2020), Doc. 17 at 8, 9-10; *Colbert v. Paul*, 858 F. App'x at 704 (June 2, 2021); *Atakapa III*, 2022 WL 1605233 at *1 (May 5, 2022); *Atakapa IV*, 3:22-cv-00539-BAJ-RLB (M.D. La., Oct. 19, 2022), Doc. 34 at 10..

[88] *Atakapa IV*, 3:22-cv-00539-BAJ-RLB (M.D. La., Nov. 16, 2022), Doc. 45-2.

[89] Local Civil Rule 83(b)(1) defines this Court's bar as "those lawyers admitted to practice before this Court who have taken the prescribed oath." Local Civil Rule 83(b)(6) "adopts the Rules of Professional Conduct of the Louisiana State Bar Association."

11(b)(2), stating: "A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law." Here, the same evidence establishing Mr. Moses's willful violation of Rule 11 also establishes his willful violation of Rule 3.1.

Louisiana Professional Conduct Rule 8.4(c) defines attorney misconduct to include "dishonesty, fraud, deceit or misrepresentation." In effect, Rule 8.4(c) prohibits an attorney from acting in "bad faith." *See* BLACK'S LAW DICTIONARY (11th ed. 2019) ("Bad Faith" is "dishonesty of belief, purpose, or motive."); *accord Turfgrass Grp., Inc. v. Ne. Louisiana Turf Farms, LLC*, No. 10-cv-1354, 2013 WL 6145294, at *3 (W.D. La. Nov. 20, 2013) (Hayes, M.J.) ("Bad faith 'is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; it contemplates a state of mind affirmatively operating with furtive design or ill will." (quoting *United States v. Gilbert*, 198 F.3d 1293, 1299 (11th Cir. 1999)).

Here, again, Mr. Moses's conduct in *Atakapa IV* shows a willful violation of Rule 8.4(c) because it is patently clear that *Atakapa IV* was motivated by a deceitful and evasive purpose—specifically, to avoid the disciplinary consequences of again pursuing his frivolous claims here, in the federal forum.

Mr. Moses's deceit in *Atakapa IV* is fully understood against the backdrop of his prior conduct in *Atakapa II* and *Colbert v. Paul*. This Court's first shot across Mr. Moses's bow came in *Atakapa II*, when, on February 14, 2020 Magistrate Judge

Wilder-Doomes recommended dismissing the case as frivolous, and further recommended that if Mr. Moses "continues to assert frivolous claims in this Court, [he] should be ordered to show cause why Fed. R. Civ. P. 11 sanctions should not issue."[90] This warning came eleven months after the Western District sanctioned Mr. Moses $2,500 for pursuing "frivolous claims," and two months *after* the Fifth Circuit dismissed *Atakapa I* as "wholly without merit." On March 31, 2020, Chief Judge Dick reaffirmed this warning when she adopted Judge Wilder-Doomes's Recommendation, dismissing *Atakapa II* with prejudice as "frivolous."[91]

When this Court dismissed *Atakapa II*, there could be no mistake that the *Atakapa* claims were frivolous. At this time, Mr. Moses's motion to amend the *Colbert* complaint to add the *Atakapa* claims was already pending.[92] Faced with the *Atakapa II* dismissal, the *only* option consistent with Mr. Moses's professional and ethical obligations was to withdraw his motion to amend. Instead, Mr. Moses persisted, allowing his motion to proceed to adjudication, resulting in Magistrate Judge Johnson's July 14, 2020 ruling, which, again, determined that the *Atakapa* claims were "wholly without merit."[93] Still, Mr. Moses did not quit: he appealed Judge Johnson's ruling to Chief Judge Dick,[94] and then to the Fifth Circuit, resulting in yet another determination (on June 2, 2021) that the *Atakapa* claims are "wholly without

---

[90] *Atakapa II*, 3:19-cv-00028-SDD-EWD (M.D. La., Feb. 14, 2020), Doc. 17 at 9-10.

[91] *Atakapa II*, Doc. 23.

[92] Mr. Moses filed his motion to amend the *Colbert* complaint on October 28, 2019, after the Western District deemed his claims frivolous, but before the Fifth Circuit issued its *Atakapa I* opinion. *Colbert*, 3:19-cv-00001-SDD-SDJ (M.D. La., Oct. 28, 2023), Doc. 30.

[93] *Colbert*, 3:19-cv-00001-SDD-SDJ (M.D. La., Oct. 28, 2023), Doc. 46, Doc. 47.

[94] *Colbert*, Doc. 46, Doc. 47.

merit," and yet another warning that he risked sanctions if he continued to pursue his claims in federal court. *Colbert*, 858 F. App'x at 704.

At this point, Mr. Moses's quest to unwind the Louisiana Purchase Treaty had hit two dead-ends in this Court: *Atakapa II* was dismissed as frivolous, and Mr. Moses's bid to inject the *Atakapa* claims into *Colbert* was rejected. Rather than stop— as was his professional duty—Mr. Moses changed tack, attempting an end-run around this Court's jurisdiction by initiating *Atakapa IV* in Louisiana's Nineteenth JDC. Even after the United States removed *Atakapa IV* to this District, Mr. Moses did not heed the prior warnings of this Court or even the Fifth Circuit; instead he sought to have *Atakapa IV* returned to state court based on a baldly disingenuous defense that it involved only a matter of trust administration (a fig leaf he continues to hide behind to this day, *supra*).

That  Mr. Moses's *Atakapa IV* gambit failed—and he now finds himself in the crosshairs of a disciplinary action—cannot disguise what is clearly evasive conduct, motivated by a dishonest purpose to obtain from the state court something that he could not obtain in this Court. That Mr. Moses pursued the exact same scheme in the Western District—injecting his claims into a client's case (*Warner*) and initiating a separate case in state court (*Atakapa III*) after his original case failed (*Atakapa I*)— reinforces that Mr. Moses's conduct here was not merely bad judgment, but was a furtive, calculated campaign to achieve an end he *knew* was unlawful under the Fifth Circuit's holding in *Atakapa I*. Put differently, Mr. Moses did not merely interpret the law incorrectly, he did the best he could to subvert it in his bizarre quest to

establish a sovereignty under his imperial rule, where his "will and pleasure" is the "law of the kingdom."[95] *See Turfgrass Grp.*, 2013 WL 6145294, at *3.

In sum, the Court easily finds that Mr. Moses engaged in dishonest and deceptive conduct throughout his prosecution of *Atakapa IV*, first by attempting an end-run around this Court's jurisdiction and disciplinary authority, and then by pursuing an ultimate goal that he knew was frivolous, wholly without merit, and, at bottom, antithetical to the Constitution he swore to defend. Mr. Moses's conduct throughout *Atakapa IV* was motivated by dishonesty and deceit, violating Professional Conduct Rule 8.4(c), and falling squarely within the textbook definition of "bad faith." *E.g.*, *In re Harris*, 2003-0212 (La. 5/9/03), 847 So. 2d 1185, 1194 (Rule 8.4(c) violation established based on attorney's efforts "to avoid lawyer discipline," which included "a dishonest or selfish motive, a pattern of misconduct, multiple offenses, [and] bad faith obstruction of the disciplinary proceeding"); *see also, e.g.*, *In re Ray*, 951 F.3d 650, 655 (5th Cir. 2020) (attorney's dishonest and deceitful conduct established bad faith); *In re Sealed Appellant*, 194 F.3d at 672, 674 (same); *Turfgrass Grp.*, 2013 WL 6145294, at *6 (attorney's "disingenuous" failure "to disclose or acknowledge his prior, inconsistent arguments, evidence, and personal belief" established bad faith).

## C. Appropriate Sanctions

The Show Cause Order notified Mr. Moses of a range of possible sanctions, specifically including a civil fine and suspension. (Doc. 1 at 1).

---

[95] *Atakapa IV*, 3:22-cv-00539-BAJ-RLB, Doc. 1-1, Application at ¶ 71.

### i.    Rule 11

Rule 11(c)(1) provides that sanctions may be imposed by the Court on "any attorney, law firm, or party that violated the rule or is responsible for the violation."[96] "Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee." *Id.*

The Court "has significant discretion in determining what sanctions, if any, should be imposed for a [Rule 11] violation, subject to the principle that the sanctions should not be more severe than reasonably necessary to deter repetition of the conduct." Fed. R. Civ. P. 11 (Advisory Committee Notes to 1993 Amendment). Still, the Court's discretion is not unbounded. When, as here, sanctions are imposed on the Court's own initiative, Rule 11 allows "nonmonetary directives" and penalties paid to the Court, Fed. R. Civ. P. 11(c)(4), but prohibits attorney's fees and/or suspension from practice, *Thornton v. Gen. Motors Corp.*, 136 F.3d 450, 455 (5th Cir. 1998).

The following factors may be weighed when determining an appropriate sanction under Rule 11:

> Whether the improper conduct was willful, or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected the entire pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; whether it was intended to injure; what effect it had on the litigation process in time or expense; whether the responsible person is trained in the law; what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; what

---

[96] At the Show Cause hearing, the Court incorrectly stated that sanctions are mandatory once a Rule 11 violation is established. This statement was based on outdated Fifth Circuit authority. *See Jennings v. Joshua Indep. Sch. Dist.*, 948 F.2d 194, 197 (5th Cir. 1991). The 1993 amendment to Rule 11 returned the imposition of sanctions to the Court's discretion. *See Webb v. LaSalle*, 537 Fed. App'x 389, 390 (5th Cir. 2013). The Court clarifies this point now, to resolve any doubt that it is exercising its discretion to impose Rule 11 sanctions.

amount is needed to deter similar activity by other litigants: all of these may in a particular case be proper considerations.

Fed. R. Civ. P. 11 (Advisory Committee Notes to 1993 Amendment).

Here, multiple aggravating factors favor a stiff penalty for Mr. Moses's Rule 11(b)(2) violation. Mr. Moses's pursuit of frivolous claims in *Atakapa IV* was willful and part of a pattern of activity that persisted for five years. His misconduct infected the entirety of the *Atakapa IV* proceedings, and made a mockery of the litigation process, yet still demanded considerable time and attention from opposing counsel and this Court. Mr. Moses is trained in the law, yet persisted in his pursuit despite *already* having been sanctioned $2,500 *twice* ($5,000 total) for pursuing the same claims in *Atakapa I* and *Atakapa III*, and having been expressly warned by the Government here that it would seek sanctions if he did not dismiss *Atakapa IV*. Mr. Moses's failure to desist even after having paid $5,000 for his prior misconduct necessarily demonstrates that he did not consider these prior fines a serious penalty.

In light of the foregoing—and particularly the ineffectiveness of prior penalties—and to deter Mr. Moses from engaging yet again in the same misconduct, the Court finds that the appropriate sanction under Rule 11(c) is a fine paid to this Court in the amount of $15,000.00, assessed jointly against Mr. Moses and the Moses Law Firm. This penalty falls within the range of penalties imposed for similar violations. *See M2 Tech., Inc. v. M2 Software, Inc.*, 748 F. App'x 588, 590 (5th Cir. 2018) (affirming sanction of $39,325.63 imposed against plaintiff's counsel under Rule 11(b)(2) for pursuing meritless claims that had previously been rejected by the district court and the Fifth Circuit); *Burger v. United States*, No. 01-cv-2357, 2001

34

WL 1490719, at *2 (E.D. La. Nov. 21, 2001) (imposing second sanction of $7,500—$15,000, cumulatively—against *pro se* plaintiff under Rule 11(b)(2) for filing a "lawsuit based on the same claims that have been dismissed numerous times"), *aff'd*, No. 01-31412, 46 F. App'x 227 (5th Cir. July 26, 2002); *cf. Delor v. Intercosmos Media Group, Inc.*, No. 04-3262, 2006 WL 435997, at *2 (E.D. La. Jan. 13, 2006) (imposing sanction of $50,000 against *pro se* plaintiff under Rule 11(b)(3) and (4) for making "factual misrepresentations," where plaintiff had "engaged in similar activity before" and "prior sanctions did not deter plaintiff from committing the instant Rule 11 violation"), *reconsideration denied*, 2006 WL 318671 (E.D. La. Feb. 9, 2006), *appeal dismissed*, No. 05-31068 (5th Cir. July 17, 2006).

### ii.    Louisiana Rules of Professional Conduct 3.1 and 8.4(c)

The Court may impose "such disciplinary action as the court may see fit" upon proof of willful noncompliance with a Local Rule. M.D. La. LR 83(b)(1). "In imposing a sanction after a finding of misconduct, a court should consider the duty violated, the attorney's mental state, the actual or potential injury caused by the attorney's misconduct, and the existence of aggravating or mitigating factors." *In re Sealed Appellant*, 194 F.3d 666, 673 (5th Cir. 1999).

Here, again, Mr. Moses's willful violation of the Local Rules demands a stiff penalty. Attorneys occupy a special position of public trust and confidence. "[T]he interests of our entire judicial system, indeed the interests of our society" are undermined when this position is abused. *United States v. Harrington*, 114 F.3d 517, 519 (5th Cir. 1997). Mr. Moses blatantly abused his position when he pursued baseless, frivolous claims in *Atakapa IV*, for the *third* time in this District *alone*. After

35

Mr. Moses failed to achieve his unlawful ends in *Atakapa II* and *Colbert*, he attempted to evade this Court's jurisdiction by pursuing the same ends in state court. Along the way, he even promoted his frivolous cause at the obvious expense of his client.[97] At every turn, Mr. Moses ignored and violated his professional and ethical obligations to the Court and to the public. Mr. Moses's misconduct in this District, beginning with *Atakapa II*, demands much more than a mere monetary penalty.

This Court has frequently admonished that "admission to practice in federal court is a privilege that may be revoked based on counsel's failure to rise to the standards of practice expected of all attorneys admitted to this District." *Weary v. Lumber Liquidators, Inc.*, No. CV 19-00698-BAJ-EWD, 2022 WL 1598341, at *6 n.7 (M.D. La. May 19, 2022) (Jackson, J.), *aff'd* 2023 WL 20873 (5th Cir. Jan. 3, 2023). Faced with similar misconduct, and particularly when the attorney has acted in bad faith, Louisiana courts do not hesitate to revoke an attorney's license to practice law; indeed, "the baseline sanction for the perpetuation of vexatious litigation is disbarment." *In re Stratton*, 2003-3198 (La. 4/2/04), 869 So. 2d 794, 798–99; *see also In re Lester*, 2009-2052 (La. 1/29/10), 26 So. 3d 735, 744 ("Case law … indicates that

---

[97] No federal rule, local rule, or Louisiana Rule of Professional Conduct quite captures the significance of an attorney co-opting a *pro se* plaintiff's meritorious claims to pursue his own frivolous agenda. Perhaps the only litigants more vulnerable than those proceeding *pro se* are those whose attorneys willfully pursue an agenda antithetical to their own. This is precisely what Mr. Moses elected to do in the *Colbert* action, and it cannot be ignored. In this Court's view, this misconduct, standing *alone*, is properly sanctionable under this Court's inherent power. *See Chambers*, 501 U.S. at 50 ("[I]f in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power."). Nonetheless, the Court stops short of imposing additional sanctions under its inherent authority, having already taken this misconduct into account when measuring Mr. Moses's deceit in *Atakapa IV*.

a lengthy period of suspension is appropriate for an attorney who engages in frivolous and vexatious litigation." (citing authorities)).

The nature of Mr. Moses's willful violation of Rules 3.1 and 8.4(c), his mental state (bad faith), his pattern of prior misconduct, the ineffectiveness of two prior sanctions, his refusal to admit his misconduct, and the additional aggravating factors discussed above undermine any confidence that Mr. Moses is currently fit to practice law in this District. The Court will suspend Mr. Moses's admission to the Middle District of Louisiana for a period of one year, expressly warning that any additional misconduct of the type set forth herein will result in disbarment. *See*, *In re Ray*, 951 F.3d at 654-55 ("Disbarment is generally appropriate when a lawyer engages in intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously, adversely reflects on the attorney's fitness to practice." (quoting *In re Sealed Appellant*, 194 F.3d at 674). Again, such penalty is commensurate to Mr. Moses's misconduct. *E.g.*, *In re Nugent*, 2017-1856 (La. 12/5/17), 231 So. 3d 19, 20 (suspending attorney for eighteen months for violations of Rule 3.1, based on attorney's conduct in filing judicial complaints without factual basis); *In re O'Dwyer*, 2016-1848 (La. 3/15/17), 221 So. 3d 1, 3 (disbarring attorney for repeatedly filing frivolous actions containing unsupported allegations and "irrelevant rhetoric"); *In re: Cook*, 06–0426 (La.6/16/06), 932 So.2d 669, 676-77 (suspending attorney for three years, with 18 months deferred, for violations of Rule 3.1, based on attorney's three-year pursuit of "frivolous and harassing claims" (citing authorities)); *In re Stratton*, 869 So. 2d at 797-99 (suspending attorney for three years for pursuing "meritless

claims" with "no good faith basis"); *In re Brough*, 98-0366 (La. 4/3/98), 709 So. 2d 210, 210 (suspending attorney for one year after attorney filed one 'meritless lawsuit without a good faith basis to do so").

### IV.   CONCLUSION

Accordingly,

**IT IS ORDERED** that Mr. Moses's **Motion To Dismiss For Failure To State An Offense (Doc. 5)** be and is hereby **DENIED**.

**IT IS FURTHER ORDERED** that within 30 days of the date of this Order, attorney Edward Moses, Jr. and the Moses Law Firm, L.L.C. shall **PAY A CIVIL FINE** to the Court in the amount of **$15,000**, as penalty for Mr. Moses's willful violation of Federal Rule of Civil Procedure 11(b)(2). Payment shall be made to the Clerk of Court for the U.S. District Court for the Middle District of Louisiana.

**IT IS FURTHER ORDERED** that attorney Edward Moses, Jr.'s admission to practice in the United States District Court for the Middle District of Louisiana be and is hereby **SUSPENDED**, effective immediately, for a period of **ONE YEAR** from the date of this Order, as penalty for his willful violation of Local Civil Rule 83, subparts (b)(1) and (b)(6), and Louisiana Professional Conduct Rules 3.1 (Meritorious Claims and Contentions) and 8.4(c) (Misconduct). Further, Mr. Moses is **WARNED** that any additional misconduct of the type set forth herein will result in disbarment from the Middle District of Louisiana.

**IT IS FURTHER ORDERED** that, consistent with Local Civil Rule 83(b)(12)(E), the Clerk of Court shall forward this Order of Suspension to the Clerks of Court for the U.S. Court of Appeals for the Fifth Circuit, the U.S. District Court for

the Eastern District of Louisiana, the U.S. District Court for the Western District of Louisiana, and the Louisiana Supreme Court, and to the Louisiana State Bar Association, and the Louisiana Attorney Disciplinary Board Office of Disciplinary Counsel.

Judgment shall be entered separately.

Baton Rouge, Louisiana, this 13th day of September, 2023

_____
**CHIEF JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

_____
**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

_____
**JUDGE JOHN W. DEGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**